653 N.W.2d 804 (2002)
In re Alan Robert WEBER, Petitioner, Respondent,
Beth Marie Dalbec, Respondent,
v.
W.P.W., Appellant, and
In re Alan Robert Weber, Petitioner, Appellant,
v.
Beth Marie Dalbec, Respondent.
Nos. CX-02-791, C2-02-820.
Court of Appeals of Minnesota.
December 10, 2002.
*806 S. Warren Gale, S. Warren Gale Law Office, P.A., Bloomington, MN, for respondent Alan Weber.
Jeffrey P. Hicken, Hicken, Scott & Howard, P.A., Anoka, MN, for respondent Beth Dalbec.
Stuart E. Gale, Stuart E. Gale Law Offices, Bloomington, MN, for appellant W.P.W.
Considered and decided by TOUSSAINT, Chief Judge, KALITOWSKI, Judge, and HALBROOKS, Judge.

*807 OPINION
HALBROOKS, Judge.
In this consolidated appeal, appellant W.P.W. disputes the district court's denial of his motion to appoint a guardian ad litem under Minn.Stat. § 525.6175 (2000), the statute governing the appointment of guardians in probate matters, and appellant Alan Weber challenges the district court's refusal to conduct an evidentiary hearing on his motion to modify custody. Because (1) Minn.Stat. § 525.6175 applies to the appointment of guardians in probate matters only, (2) Weber failed to establish a prima facie case for modification under the Nice-Petersen factors and Minn.Stat. § 518.18(d) (Supp.2001), (3) the district court's order did not violate W.P.W.'s right to counsel, and (4) the remaining issues raised do not provide a basis for relief, we affirm.

FACTS
This matter arises out of a very acrimonious custody battle. The marriage of appellant Alan Robert Weber and respondent Beth Marie Dalbec was dissolved on February 2, 1998. Following the parties' stipulation, the court awarded Dalbec sole legal and physical custody of the couple's children, appellant W.P.W. (now age 15) and C.W.W. (now age ten). Weber was granted reasonable and liberal visitation.
On December 21, 2001, W.P.W. brought a motion pursuant to Minn.Stat. § 525.6175 (2000) to appoint his maternal uncle, Bradley Dalbec, as his guardian ad litem (GAL). W.P.W.'s objective in making the motion was so that Bradley Dalbec could assist him with a motion for a change of custody to live with his father.
On January 22, 2002, Beth Marie Dalbec filed a motion, inter alia, to dismiss W.P.W.'s motion and to obtain supervised visitation between W.P.W. and Weber. In her responsive affidavit, Dalbec alleged that Weber manipulated and emotionally harmed W.P.W.
On February 14, 2002, W.P.W. filed a second motion that sought a change of permanent and temporary physical custody to his father subject to reasonable visitation with his mother. Weber simultaneously filed a motion, seeking, inter alia, to obtain permanent and temporary physical custody of both minor children and to appoint Bradley Dalbec as GAL for both minor children. Dalbec opposed both motions.
On March 8, 2002, the court issued an order denying, with prejudice, W.P.W.'s motion for the appointment of Bradley Dalbec as GAL and his motion for a change in custody. The court found that W.P.W. lacked standing to bring a motion for change of custody and that the procedure for appointment of a GAL in family law cases is properly set forth in Minn. R. Gen. Pract. 904.01 and not Minn.Stat. § 525.6175.
The court dismissed, without prejudice, Weber's motions for modification of custody and a finding that the property settlement was fully paid on the basis that the motions were untimely. The court ordered the appointment of a GAL and scheduled an evidentiary hearing for April 26, 2002, on the issues of whether or not Weber's visitation should be restricted and whether his child support obligation was commensurate with the child support guidelines. The court also ordered the GAL to issue a report on the visitation issue and ordered Weber to produce pertinent wage information before the hearing. Additionally, the court ordered that the attorney for W.P.W. and Weber's attorney should not meet with or discuss issues relating to the litigation with the children without first bringing a motion before the court.
*808 In a report dated April 10, 2002, the GAL expressed concern that, "Mr. Weber and [W.P.W.] use the exact same words and phrases [in reference to Dalbec and the court proceedings]," and that "[t]he parroting was incredible." The GAL also reported that W.P.W. said that Weber helped him to "set my mom up" and "encouraged" misbehavior to cause his mother to "throw" him out. The GAL noted that, "[n]either child indicated being in any type [of] emotional or physical danger or being neglected [by Dalbec]." The GAL concluded that, although Weber had endangered W.P.W.'s emotional health and impaired his emotional development by putting him in the middle of a bitter custody dispute, supervised or restricted parenting time would not benefit W.P.W. because of his age and his bond to his father. She recommended a 30-day break from visitation with Weber so that Dalbec could "regain control of her home" and that the parents communicate through the visitation expeditor and not through the children.
The court held the scheduled hearing on April 26, 2002. After reviewing the GAL's report and listening to counsel's arguments on the custody issue, the court determined that (1) there had been a significant change of circumstances based on W.P.W.'s change in preference to live with Weber, but that the change resulted from Weber's manipulation of W.P.W.; (2) Weber's insistence on involving W.P.W. in the custody dispute, despite a court order prohibiting such conduct; failure to hold W.P.W. accountable for bad behavior; and lack of support for W.P.W.'s ongoing involvement with Dalbec resulted in endangerment of W.P.W.'s emotional health and impairment of his emotional development; (3) there was no showing of endangerment of W.P.W. while in Dalbec's home; and (4) W.P.W. would be harmed by living with his father because of Weber's efforts to manipulate W.P.W. and alienate him from Dalbec. Weber's motion for an evidentiary hearing on the change-of-custody motion was denied on the ground that Weber had failed to establish a prima facie case.

ISSUES
1. Did the district court err in denying W.P.W.'s motion for the appointment of a guardian ad litem of his choice under Minn.Stat. § 525.6175 (2000), a probate statute?
2. Did the district court abuse its discretion by denying Weber an evidentiary hearing on his change-of-custody motion?
3. Did the district court improperly preclude the attorney for W.P.W. and the attorney for Weber to discuss any issue relating to the litigation, child custody, or visitation with W.P.W. without first obtaining the court's permission?

ANALYSIS

I. Guardian Ad Litem
Relying on Minn.Stat. § 525.6175 (2000), a probate statute, W.P.W. argues that the district court erred by failing to appoint the GAL of his choosing. Minn. Stat. § 525.6175 provides that the court shall appoint a guardian nominated by a minor in a probate proceeding, "if the minor is 14 years of age or older, unless the court finds the appointment contrary to the best interests of the minor."
W.P.W. cites Ross v. Ross, 477 N.W.2d 753, 756-57 (Minn.App.1991), in support of his argument that Minn.Stat. § 525.6175 applies in a custody proceeding. The issue before us in Ross was whether the father, the noncustodial parent, was entitled to an evidentiary hearing on his motion for modification of custody. Id. at 755. We concluded *809 that the father's affidavit created a prima facie case of endangerment to the child's health or emotional well being that necessitated a hearing. Id. at 756. In reaching that conclusion, we relied, in part, on the age of that child (17) and noted that Minnesota law does sometimes give deference to the choice of an older teenager, citing Minn.Stat. § 525.6175. Id. But Ross does not stand for the proposition that Minn.Stat. § 525.6175 is applicable to a custody-modification proceeding in a family law context.
Indeed, Minn.Stat. § 525.6175 should not apply to the appointment of a GAL in a custody-modification proceeding because a guardian in a probate matter possesses significantly different powers and duties than a guardian in a family law matter. See Minn.Stat. § 525.619 (2000). The district court did not err in concluding that, "[t]he goal in [family law] cases is `the prompt appointment of an independent guardian ad litem to advocate for the best interests of the child.'" Minn. R. Gen. Pract. 904.03.

II. Custody Modification
Weber disputes the district court's denial of his motion to modify custody without conducting an evidentiary hearing. This court applies an abuse-of-discretion standard in reviewing a district court's decision to dismiss a custody-modification petition without an evidentiary hearing. Geibe v. Geibe, 571 N.W.2d 774, 777 (Minn.App. 1997). We defer to the opportunity of the trial court to assess the credibility of the witnesses. See Sefkow v. Sefkow, 427 N.W.2d 203, 210 (Minn.1988) (citing Minn. R. Civ. P. 52.01).
The party seeking a custody modification must submit an affidavit asserting sufficient justification for the modification. Minn.Stat. § 518.185 (2000). To obtain an evidentiary hearing on a custody-modification petition, the moving party must establish the following four elements of a prima facie case: (1) a change in the circumstances of the child or custodian, (2) that a modification would serve the best interests of the child, (3) that the child's present environment endangers his physical or emotional health or emotional development, and (4) that the harm to the child likely to be caused by the change of environment is outweighed by the advantage of change. Geibe, 571 N.W.2d at 777-78.
In determining whether the moving party has established a prima facie case, the district court must accept the facts in the moving party's affidavit as true. Nice-Petersen v. Nice-Petersen, 310 N.W.2d 471, 472 (Minn.1981). If the moving party's affidavit does not allege facts that, if true, would provide sufficient grounds for modification, the court need not grant an evidentiary hearing. Roehrdanz v. Roehrdanz, 438 N.W.2d 687, 690 (Minn.App.1989), review denied (Minn. June 21, 1989). But if some dispute exists as to whether the present environment endangers the child's emotional development, an evidentiary hearing would be helpful and is justified. Harkema v. Harkema, 474 N.W.2d 10, 14 (Minn.App. 1991). Here, appellant's affidavits do not allege facts that warrant a separate evidentiary hearing.

A. Change in Circumstance
To warrant modification of custody, the change in circumstances must be significant and must have occurred since the original custody order. Roehrdanz, 438 N.W.2d at 690. Moreover, the change in circumstances must endanger the child's physical or emotional health or development. Nice-Petersen, 310 N.W.2d at 472 (citing Minn.Stat. § 518.18(d)(iii) (1980)). A child's preference to live with a different parent may constitute a change in circumstances *810 sufficient to warrant an evidentiary hearing. Geibe, 571 N.W.2d at 778. But a stated preference does not, by itself, mandate that the court hold an evidentiary hearing. Id. Most importantly, a district court may deny an evidentiary hearing "where it is obvious from the record that a child's stated preference results from manipulation by the moving party." Id. Although the district court must disregard any directly contradictory statements in the nonmoving party's submissions, it "may take note of statements in [the nonmoving party's submissions] that explain the circumstances surrounding the [moving party's] accusations." Id. at 779.
Here, the district court determined that W.P.W.'s "expressed preference" to live with his father "[was] significant and [had] occurred since the last custody order," but that W.P.W.'s "expressed preference for a change in custody resulted from manipulation by his father." The record supports the district court's finding of manipulation.
The district court relied in part on the GAL's conclusion that the change of circumstances resulted from Weber's manipulation of W.P.W. The district court also properly took note of statements in Dalbec's affidavit that explained the circumstances. Taken together, the record supported the conclusions that
the signs of alienation could not be more cleara campaign of hatred, a failure of guilt on the minor child for treating the parent with malice, the parroting of adult language, and a declaration of independence.
The record reflects that the district court determinations were not clearly erroneous, so we will not disturb the conclusion that manipulation was a factor in this case.

B. Best Interests of the Child
A child's best interests are determined according to the factors listed in Minn.Stat. § 518.17 (2000). Geibe, 571 N.W.2d at 778. The district court noted that Weber failed to directly address W.P.W.'s best interests in either of his affidavits. Because of the absence of the best-interests factors discussed by Weber, the court again relied on findings by the GAL. The GAL did not believe that a change in custody would be in W.P.W.'s best interests. For example, the GAL's discomfort with the fact that Weber continued to involve W.P.W. in the details of the custody and dissolution, contrary to the court's order, weighs against the best-interests factor considering "the interaction and interrelationship of the child with a parent or parents [and] siblings." Minn. Stat. § 518.17, subd. 1(5). The GAL's belief that Weber would not support W.P.W.'s continued relationship with his current primary caregiver, his mother, who would also retain custody of his brother, weighs against the above factor and the "intimacy of the relationship between each parent and the child." Id., subd. 1(4), (5). The GAL also evidenced concern that Weber did not hold W.P.W. accountable for his own bad behaviors, which could result in problems in school and in the community. Id., subd. 1(6). Moreover, although the best-interests-of-the-child factors include a consideration of the child's preference, as discussed above, the record supports the district court's finding that the preference stems from manipulation by Weber. Even after reviewing the facts alleged by Weber and taking the facts to be true, the district court determined that those facts did not support a finding that modification would be in the best interests of W.P.W. In this regard, the court did not abuse its discretion.

*811 C. Endangerment
Weber makes two primary endangerment arguments: (1) that Dalbec abused W.P.W., and (2) that the denial of a teenager's custodial preference demonstrates endangerment.
Allegations of physical and emotional abuse are indicators of endangerment, but only when the degree of danger is significant. Ross, 477 N.W.2d at 756. A district court may properly deny an evidentiary hearing where the affidavit submitted in support of a modification of custody "was devoid of allegations supported by any specific, credible evidence." Axford v. Axford, 402 N.W.2d 143, 145 (Minn.App.1987). Importantly, in order to establish danger to a child's welfare, a parent's conduct must be shown to result in an actual adverse effect on the child. Dabill v. Dabill, 514 N.W.2d 590, 595-96 (Minn.App.1994). For example, behavioral problems and poor school performance by the child have served as indications of endangerment to a child's physical and emotional health. Kimmel v. Kimmel, 392 N.W.2d 904, 908 (Minn.App.1986), review denied (Minn. Oct. 29,1986).
Weber alleges that Dalbec pulled C.W.W. downstairs by a leg, that Dalbec often yelled obscenities, heaped physical and emotional abuse on the boys, and that one Easter, she pulled W.P.W. off the couch by his hair while screaming at him because he had dirt on his pants. The record shows that Weber petitioned for, and was denied an order for protection for the minor children when Dalbec allegedly "stomped" on W.P.W. But in order to establish danger to a child's welfare, Weber must show that Dalbec's conduct resulted in an actual adverse effect on the child. Weber presented no evidence demonstrating any such adverse effect. In this case, the district court rejected Weber's allegations because he failed to allege specific facts and because the allegations presented in Weber's affidavits were not supported by first-hand knowledge. The court also relied on the GAL's report, which found no evidence of physical or emotional endangerment of W.P.W. in the mother's environment. We conclude that the district court did not abuse its discretion.
Weber next argues that, "[t]he choice of an older teenage child is an overwhelming consideration in * * * deciding whether he is endangered by preserving the custodial placement he opposes." Ross, 477 N.W.2d at 756. But while a child's preference may justify an evidentiary hearing, a child's preference does not alone provide sufficient evidence of endangerment. Geibe, 571 N.W.2d at 778-79.
In Ross, the appellant established a prima facie case because the teenage child held a strong preference to live with his father, the child physically relocated to the father's home, and the child suffered emotional distress that led to poor school performance. Ross, 477 N.W.2d at 754. Here, by contrast, the record demonstrates only that the child wishes to change custody. Because none of the other endangerment elements are present and a change in preference alone does not prove emotional endangerment, Geibe, 571 N.W.2d at 779, the district court did not abuse its discretion in determining that evidence did not establish endangerment.

D. Balance of Harm
Appellant must next show that the advantage of modifying custody outweighs the harm likely to be caused by the change. Roehrdanz, 438 N.W.2d at 690. Minnesota law presumes that stability in custody is in a child's best interests. Westphal v. Westphal, 457 N.W.2d 226, 229 (Minn.App.1990). While Minnesota courts *812 have sometimes endorsed an older child's custody preference, those cases have predominantly involved the preference to remain in the present arrangement or to return to a previous long-term custodial arrangement. Geibe, 571 N.W.2d at 780. Here, by contrast, the district court found that Weber's affidavits failed to establish that W.P.W.'s desire to change living arrangements, and to live with a parent with whom he had never lived before, would benefit the child. Because W.P.W. was not endangered living with Dalbec, and because Weber's permissive parenting and manipulation would harm W.P.W., the district court did not abuse its discretion in concluding that the benefit of custody modification would not outweigh the harm likely to be caused by the change.

III. Attorney Contact
W.P.W. claims that paragraph 21 of the district court's March 3, 2002 order prohibits W.P.W.'s attorney from meeting with him under any circumstances. W.P.W. contends that because he was on probation to the Wright County Court Services, and could face further penalties, Minn. R. Juv. P. 15.07 requires that he have access to counsel.
The express language in the order belies W.P.W.'s reading of the order. The order states that:
The attorney for the minor child and the attorney for Petitioner shall not meet with the minor children or discuss any issues relating to this litigation, child custody or visitation with the minor children. * * * If the attorney representing Petitioner wishes to meet with either minor child, he shall bring a motion before the Court requesting permission to do so.
The order does not preclude W.P.W. from discussing any issues relating to probation or other juvenile protection with his attorney. The court merely precludes the attorney from discussing custody issues. In the context of this acrimonious proceeding, where the father was found to be alienating his son from his mother, this limitation was not an abuse of the court's discretion.
Weber and W.P.W. raise several other issues on appeal. They argue that the court erred in (1) appointing a GAL to conduct parenting-time studies and other investigations, (2) ignoring the untimeliness of Dalbec's motion and not granting a continuance, (3) denying W.P.W.'s standing to seek relief in his parents' dissolution proceeding, and (4) denying a continuance for an allegedly untimely motion, and that on remand, the court should be directed to recuse itself in light of the "personal opinions" expressed in the order. After fully examining these additional issues, we conclude that they lack merit.

DECISION
The district court did not err in concluding that W.P.W. may not rely on Minn. Stat. § 525.6175 (2000), a probate statute, for the appointment of a guardian ad litem in a custody-modification proceeding. Further, the district court did not violate W.P.W.'s right to counsel or abuse its discretion by denying Weber's motion for modification of custody without an evidentiary hearing.
Affirmed.