2005 ND 151

**Leah M. LAGRO, Plaintiff
and Appellant**

v.

**James A. LAGRO, Defendant
and Appellee.**

No. 20050094.

Supreme Court of North Dakota.

Aug. 18, 2005.

Loren C. McCray, Bismarck, N.D., for plaintiff and appellant.

Brenda A. Neubauer, Neubauer & Oster, Bismarck, N.D., for defendant and appellee.

SANDSTROM, Justice.

[¶ 1] Less than ten months after the district court awarded primary physical custody of the child to the father, the mother moved to amend the judgment to change custody. After the district court denied the motion, she appealed the order. Concluding the district court did not err in denying an evidentiary hearing, we affirm.

## I

[¶ 2] Leah and James Lagro were divorced on March 3, 2004. From their marriage, they have one child, who was five years old at the time of the divorce. The mother was given primary physical custody while the divorce was pending. After the divorce trial, the court wrote in its memorandum opinion:

> [T]his Court ordered the [mother] to give the [father] notice whenever [the] minor child was in need of child care and to allow the [father] the first opportunity to provide the same. Notwithstanding the Court's explicit admonition to the [mother] to allow the [father] first opportunity to provide child care, [the mother] has failed to grant the defendant this opportunity and has employed third-party child care providers. Additionally, [the mother] represents to the Court her extraordinary flexible work schedule, yet when the defendant at-tempted to exercise summertime week long visitation, it required multiple efforts on the part of the [father] to achieve the same.

The divorce judgment ordered "joint custody" of the minor child with physical custody going to James Lagro during the school year and to Leah Lagro during the summer months, beginning one week after school lets out until one week before the start of the next school year. The judgment also gave Leah Lagro visitation after school until 5:30 p.m. on Mondays, Wednesdays, and Fridays and until 8:00 p.m. on Tuesdays and Thursdays. The parties alternate holidays and weekends, and each is entitled to one week of summer vacation with the child. The court specifically found the "previous reluctance on the part of the mother to grant the father first opportunity to provide child care when the same is needed," and ordered that "[e]ach of the parties ... are granted the exclusive first opportunity to provide child care for the minor child when the same is needed for more than two hours in length."

[¶ 3] On December 30, 2004, Leah Lagro moved for an evidentiary hearing to modify the divorce judgment to give her exclusive care, custody, and control of the child. She filed affidavits alleging that James Lagro was neglecting his parental duties and that she had been acting as the primary physical custodian since the divorce. She alleged that when the child was with his father, there were problems that could endanger the child's physical or emotional health as well as impair his emotional development.

[¶ 4] The district court denied the motion to amend the divorce judgment, stating there had not been a material change of circumstances since the original divorce judgment.

[¶ 5] Leah Lagro appeals the order.

[¶ 6]   The district court had jurisdiction under N.D. Const. art. VI, § 8, and N.D.C.C. § 27–05–06. The appeal was timely under N.D.R.App.P. 4(a). This Court has jurisdiction under N.D. Const. art. VI, § 6, and N.D.C.C. § 28–27–01.

## II

[¶ 7]   Leah Lagro argues the district court erred in denying an evidentiary hearing on her motion for custody modification. She claims her affidavits establish sufficient evidence to prove that a material change of circumstances has occurred. She argues her affidavits demonstrate the child's present environment may endanger his physical or emotional health or impair his emotional development. She also claims the child is already in her care, custody, and control because she has been the primary caregiver for more than six months.

[¶ 8]   James Lagro argues, on appeal, that Leah Lagro is rearguing the same issues presented during the original divorce hearing and that all of her new allegations were contradicted and discredited by his affidavits. He asserts the new allegations were not supported by teachers, qualified mental health experts, social service workers, or any other unbiased individuals. He argues these new allegations do not meet the more stringent burden placed on change-of-custody motions that occur within two years of the original divorce decree.

[¶ 9]   The test for changing the custody of a child after a divorce decree is set out in N.D.C.C. § 14–09–06.6, which provides:

Limitations on postjudgment custody modifications.

.  .  .  .

4.   A party seeking modification of a custody order shall serve and file moving papers and supporting affidavits and shall give notice to the other party to the proceeding who may serve and file a response and opposing affidavits. The court shall consider the motion on briefs and without oral argument or evidentiary hearing and shall deny the motion unless the court finds the moving party has established a prima facie case justifying a modification. If a prima facie case is established, the court shall set a date for an evidentiary hearing.

5.   The court may not modify a prior custody order within the two-year period following the date of entry of an order establishing custody unless the court finds the modification is necessary to serve the best interest of the child and:

a.   The persistent and willful denial or interference with visitation;

b.   The child's present environment may endanger the child's physical or emotional health or impair the child's emotional development; or

c.   The primary physical care of the child has changed to the other parent for longer than six months.

6.   The court may modify a prior custody order after the two-year period following the date of entry of an order establishing custody if the court finds:

a.   On the basis of facts that have arisen since the prior order or which were unknown to the court at the time of the prior order, a material change has occurred in the circumstances of the child or the parties; and

b.  The modification is necessary to serve the best interest of the child.

. . . .

8.  Upon a motion to modify custody under this section, the burden of proof is on the moving party.

N.D.C.C. § 14–09–06.6.

■ [¶ 10]  The district court analyzed the child custody modification motion under the more lenient N.D.C.C. § 14–09–06.6(6) standard, which applies if a modification is sought after two years following the date of an order establishing custody. "We will not set aside a correct result merely because an incorrect, more relaxed standard was applied, if the result is the same under the correct law and reasoning." *State ex rel. D.D. v. G.K.*, 2000 ND 101, ¶ 6, 611 N.W.2d 179; *Interest of K.M.G.*, 2000 ND 50, ¶ 7, 607 N.W.2d 248.

[¶ 11]  The legislature enacted N.D.C.C. § 14–09–06.6 to address the frequency of child custody disputes. 1997 N.D. Sess. Laws ch. 149, § 1. We have held:

The purpose of the legislation was to curtail repeat custody litigation. It is the product of the 1995 Joint Family Law Task Force formed by order of this Court at the request of the State Bar Association. Testifying on the legislation before the Senate Judiciary Committee, Chair Sherry Mills Moore explained the object of the proposed legislation:

With SB 2167 we are trying to put more stability in the lives of children who are the object of a custody dispute by slowing the revolving door to the courthouse. . . .

. . . . The decision about custody, and the process attendant to making that decision are of their very nature painful, disruptive, and destabilizing. . . .

. . . .

Under SB 2167, for a period of two years following a custody determination there is something of a moratorium for the family. The custody-changing process cannot be initiated except in some specific and necessary situations.

*Hearing on SB 2167 before the Senate Judiciary Committee*, 55th N.D. Leg. Sess. (Jan. 21, 1997).

*Quarne v. Quarne*, 1999 ND 188, ¶ 9, 601 N.W.2d 256.

[¶ 12]  Leah Lagro argues the district court erred by not ordering an evidentiary hearing. A party seeking modification of a custody order has to file moving papers and supporting affidavits with the court. N.D.C.C. § 14–09–06.6(4).

[¶ 13]  This Court generally applies a clearly erroneous standard when reviewing child custody modifications. *See Frieze v. Frieze*, 2005 ND 53, ¶ 3, 692 N.W.2d 912; *Roberson v. Roberson*, 2004 ND 203, ¶¶ 4, 10, 688 N.W.2d 380; *Lawrence v. Delkamp*, 2003 ND 53, ¶ 7, 658 N.W.2d 758; *Seibel v. Seibel*, 2004 ND 41, ¶ 5, 675 N.W.2d 182; *Damron v. Damron*, 2003 ND 166, ¶ 5, 670 N.W.2d 871; *Lanners v. Johnson*, 2003 ND 61, ¶ 4, 659 N.W.2d 864; *Kelly v. Kelly*, 2002 ND 37, ¶ 13, 640 N.W.2d 38; *Interest of K.M.G.*, 2000 ND 50, ¶ 4, 607 N.W.2d 248. A majority of this Court, however, has established a de novo standard of review when deciding whether a prima facie case is established requiring an evidentiary hearing. *See Hawley v. LaRocque*, 2004 ND 215, ¶ 4, 689 N.W.2d 386; *Tank v. Tank*, 2004 ND 15, ¶ 46, 673 N.W.2d 622 (Maring, J., dissenting). North Dakota patterned its affidavit procedure to modify custody within two years of a prior consideration on Minnesota's statute. Joint Task Force on Family Law, *Summary Report* (June 17, 1996). Minnesota employs an abuse-of-discretion standard in reviewing the denial of an eviden-

tiary hearing on change of custody. *In re Weber,* 653 N.W.2d 804, 809 (Minn.Ct.App. 2002); *Valentine v. Lutz,* 512 N.W.2d 868, 872 (Minn.1994); *see also Smith v. Smith,* 508 N.W.2d 222, 226–27 (Minn.Ct.App. 1993); *Nice–Petersen v. Nice–Petersen,* 310 N.W.2d 471, 472 (Minn.1981).

■ [¶ 14] Our North Dakota statute requires not only a prima facie case but also provides the opposing party may file affidavits, and it requires the court to "deny the motion unless the court *finds* the moving party has established a prima facie case *justifying* a modification." N.D.C.C. § 14–09–06.6(4) (emphasis added). The word "finds" reflects a degree of weighing of conflicting evidence, and the word "justifying" reflects "to show ... to be just or right." *The Random House Dictionary of the English Language* 719, 1040 (2d ed.1987); *see also Black's Law Dictionary* 882–83 (8th ed.2004). In view of the statutory language, and consistent with the legislative history, our review of the denial of an evidentiary hearing on change of custody will be under an abuse-of-discretion standard. *Tank* and *Hawley* are superseded to the extent they established a de novo review of a denial of an evidentiary hearing.

[¶ 15] The moving party must present prima facie evidence. Prima facie evidence is admissible evidence that, if uncontradicted, would be sufficient to justify a judgment in the presenting party's favor. *Black's Law Dictionary* 598, 1228 (8th ed.2004).

■ [¶ 16] We have outlined our standard for establishing a prima facie case for a child custody modification:

A party seeking custody modification under N.D.C.C. § 14–09–06.6(4) is entitled to an evidentiary hearing if the party brings a prima facie case, by alleging, with supporting affidavits, sufficient facts which, if uncontradicted, would support a custody modification in favor of that party. Generally, the opposing party must rebut a prima facie case by going forward with evidence showing the moving party is not entitled to the relief requested. *Helbling [v. Helbling],* 541 N.W.2d [443,] 445–46 [ (N.D.1995) ]; *see also Bismarck Baptist Church v. Wiedemann Industries, Inc.,* 201 N.W.2d 434, 441 (N.D.1972). Where the opposing party presents counter affidavits which conclusively establish that the allegations of the moving party have no credibility or where the movant's allegations are, on their face, insufficient, even if uncontradicted, to justify custody modification, the court, under N.D.C.C. § 14–09–06.6(4), can find the moving party has not brought a prima facie case and deny the motion without an evidentiary hearing.

*O'Neill v. O'Neill,* 2000 ND 200, ¶ 5, 619 N.W.2d 855.

[¶ 17] A majority of this Court has stated:

A prima facie case does not require facts which, if proved, would mandate a change of custody as a matter of law. A prima facie case only requires facts which, if proved at an evidentiary hearing, would support a change of custody that could be affirmed if appealed. A prima facie case is only "enough evidence to allow the fact-trier to infer the fact at issue and rule in the party's favor." It is a bare minimum.

*Tank v. Tank,* 2004 ND 15, ¶ 12, 673 N.W.2d 622 (citations omitted).

■ [¶ 18] Even if we were to apply the lower standard enunciated in *Tank,* allegations alone do not establish prima facie evidence requiring an evidentiary hearing. *See Hawley,* 2004 ND 215, 689 N.W.2d 386 (general allegations to support a motion to modify custody are not enough

to prove a prima facie case). Affidavits must be competent in order to fulfill the legislative requirement of showing prima facie evidence before the moving party is entitled to an evidentiary hearing. *Tank*, 2004 ND 15, ¶¶ 52, 54, 673 N.W.2d 622 (Sandstrom, J., dissenting). Affidavits are not competent when "they do not show a basis of actual personal knowledge, or they are conclusory, stating conclusions without the support of evidentiary facts." *Id.* at ¶ 56. "Competence generally requires that the witness have first-hand knowledge," and witnesses "are generally not competent to testify to what they only 'suspect' or 'secretly hope' the facts are." *Id.* at ¶ 55. "A district court may properly deny an evidentiary hearing where the affidavit submitted in support of a modification of custody 'was devoid of allegations supported by any specific, credible evidence.'" *In re Weber*, 653 N.W.2d at 811 (quoting *Axford v. Axford*, 402 N.W.2d 143, 145 (Minn.Ct.App.1987)).

## A

[¶ 19] To prove the present environment may endanger the child's physical or emotional health or impair the child's emotional development, Leah Lagro alleged in her affidavit that James Lagro has attended only a few post-divorce counseling appointments with the child and wants to cancel the remaining appointments; that he procrastinates and often fails to take care of the child's medical, optometric, and dental needs; that he allows the child to stay up too late and makes him eat breakfast at school instead of at home; that he discusses the court proceedings with the child; that he had police officers accompany him to her house to pick up the child; and, that he "wrestles" with his girlfriends in front of the child.

[¶ 20] The district court held, "A review of plaintiff's affidavit and supporting affidavits, together with other materials, and the response of the defendant herein do not convince this Court that there exists a prima facie case justifying a modification or amendment to the existing Judgment."

[¶ 21] Leah Lagro's assertions do not create prima facie evidence that the child's living environment with James Lagro may endanger his physical or emotional health or impair his emotional development. Although inappropriate behavior in front of the child, if adequately supported, could present a prima facie case, the affidavits here do not present competent evidence that the child was exposed to such behavior. *See Hawley*, 2004 ND 215, ¶ 10, 689 N.W.2d 386. Leah Lagro did not provide a basis for her claimed knowledge about various claimed incidents or what exactly the claimed incidents entailed. As this Court has said before, "Such bare-bones allegations, without support, are insufficient to meet the required prima facie standard." *Id.; see also Lawrence*, 2003 ND 53, ¶ 8, 658 N.W.2d 758. The remaining allegations do not present a prima facie case, within the record, as required under N.D.C.C. § 14–09–06.6(4).

## B

[¶ 22] The merit of Leah Lagro's assertion that primary physical care of the child has changed to her and has lasted longer than six months is not clear from the record. She claims in her affidavit that the child "has stayed with me over night usually two to three nights per week along with every other weekend. There was a stretch of eleven weekends where [the child] stayed with me eight out of eleven of them." Leah Lagro argues she has become the primary physical caregiver by virtue of the amount of time she spends with the child. A strict mathematical calculation from the affidavits of the time

spent with the child does not establish a change of primary physical care, nor does the legislative history reflect such a method. *Hearing on S.B. 2167 Before the Senate Judiciary Comm.*, 55th N.D. Legis. Sess. (Jan. 21, 1997) (testimony of Senator Wayne Stenehjem and Sandi Tabor, Executive Director of the State Bar Association of North Dakota). Her use of the word "usually" also does not clearly reflect how often the child stays with her. This is not sufficient evidence of a change of primary physical care to meet the prima facie requirement under N.D.C.C. § 14–09–06.6(4).

[¶ 23] The lack of detail and competency in Leah Lagro's allegations make them insufficient on their face to establish a prima facie case for custody modification.

## III

[¶ 24] We affirm the district court's order denying the motion to amend judgment.

[¶ 25] MARY MUEHLEN MARING, concurs.

I concur in the result. GERALD W. VANDE WALLE, C.J.

[¶ 26] The Honorable DANIEL J. CROTHERS did not participate in this decision.

KAPSNER, Justice, dissenting.

[¶ 27] I respectfully dissent. The majority ignores the accepted meaning of the term "prima facie" used in N.D.C.C. § 14–09–06.6(4), thereby changing the legal standard by which this Court reviews whether a custody hearing must be held. The majority bases its determination on Minnesota precedent which makes it a matter of discretion whether to hold such a hearing. However, Minnesota precedent is not applicable. Nowhere in the Minnesota statute governing custody modifica-

tions, Minn.Stat. Ann. § 518.18 (West 2004), is the term "prima facie" used. Although there are similarities between N.D.C.C. § 14–09–06.6 and Minn.Stat. Ann. § 518.18, I do not assume that our legislature engaged in a meaningless act when it added the concept of establishing a prima facie case to our statute. *Bickel v. Jackson*, 530 N.W.2d 318, 320 (N.D.1995) ("There is a presumption the legislature acts with purpose and does not perform idle acts").

[¶ 28] Subsection 4 of N.D.C.C. § 14–09–06.6, which is unlike the Minnesota statute, provides:

A party seeking modification of a custody order shall serve and file moving papers and supporting affidavits and shall give notice to the other party to the proceeding who may serve and file a response and opposing affidavits. The court shall consider the motion on briefs and without oral argument or evidentiary hearing and shall deny the motion unless the court finds the moving party has established a prima facie case justifying a modification. If a prima facie case is established, the court shall set a date for an evidentiary hearing.

Prima facie is a defined legal term:

A prima facie case does not require facts which, if proved, would mandate a change of custody as a matter of law. A prima facie case only requires facts which, if proved at an evidentiary hearing, would support a change of custody that could be affirmed if appealed. *See Volz[ v. Peterson]*, 2003 ND 139, ¶ 8, 667 N.W.2d 637. A prima facie case is only "enough evidence to allow the fact-trier to infer the fact at issue and rule in the party's favor." *Black's Law Dictionary* 1209 (7th ed.1999). It is a bare minimum. The affidavits Koble presented establish a prima facie case that would

support, though not necessarily require, custody modification, if the allegations were ultimately proven. The trial court erred with regard to the allegations Koble presented of child preference, frustration of visitation, and physical and emotional endangerment when it found Koble's allegations were insufficient to support modification, even if uncontradicted.

*Tank v. Tank,* 2004 ND 15, ¶ 12, 673 N.W.2d 622 (footnote omitted).

[¶ 29]  Whether a prima facie case has been made is a matter of law. *O'Neill v. O'Neill,* 2000 ND 200, ¶ 8, 619 N.W.2d 855; *Quarne v. Quarne,* 1999 ND 188, ¶ 12, 601 N.W.2d 256. *See generally Helbling v. Helbling,* 541 N.W.2d 443 (N.D.1995).

[¶ 30]  The allegations of the mother's affidavit in support of her motion to change custody include the following:

10.  I have talked with Jim about doctors, dentist, eye doctors, as far as setting up [the child's] appointments. He fails to set up any of them and after I remind him two or three times, he asks me to just take care of it.

. . . .

12.  [The child] has a heart murmur and Jim didn't even show up at [the child's] echocardiogram because he said he forgot. He had dropped [the child] off with me that morning and I reminded him, but he still did not attend.

13.  [The child] was complaining that his tooth was hurting and I asked Jim to set up an appointment, this was in February. After a couple of months and a few reminders, Jim told me to set it up since I would be taking [the child] to it. He stated that there really was no need for [the child] to go because they are just baby teeth and are going to

fall out anyway. I tried to set up the appointment with my dentist of twenty-eight years and found out that they wouldn't see [the child] until Jim paid off his own bill that was outstanding. The dentist office agreed to set [the child] and I up on a separate account from Jim and I would be ultimately responsible to pay the bill, in full at the time of the appointment, which I agreed to do. I asked Jim if he would help me pay it and he said that he had no money, even though he bought [the child] a 3–wheeler a few weeks prior. I called [the child's] grandma and asked if I could borrow the money and she agreed. She was reimbursed as soon as the insurance company reimbursed me. The dentist has stated that [the child] will be seeing an orthodontist by the time he is eight.

14.  Besides [the child's] bad teeth he failed his eye test in school. Jim didn't take [the child] in for a follow up eye exam so I took [the child] in and got everything done. End result, [the child] had to get glasses. I paid for everything that my insurance wouldn't cover, which is the case for all of [the child's] medical bills. [The child] has a lazy eye and the doctor said that since he's so young we could probably correct his eye with exercises that he's supposed to do every night for ten minutes. [The child] never does his eye exercises at his dads. He says that they never have enough time and his dad told him he wouldn't go blind if he doesn't do them.

[¶ 31]  We have said allegations of neglect of the health needs of the child is an

assertion of a prima facie case. *Lanners v. Johnson,* 2003 ND 61, ¶ 12, 659 N.W.2d 864. The allegations made by the mother in this case are specific and she is competent to make most of them. I would hold that ·a prima facie case has been made requiring custody to be examined under N.D.C.C. § 14–09–06.6 and a hearing to be conducted to determine whether those allegations will be supported or refuted by the evidence introduced at that hearing.

[¶ 32] Because allegations supporting a prima facie case are rather easy to make, the practice of making unsubstantiated allegations would defeat the purpose of the statute which is to reduce the number of unsettling motions to modify custody. To counteract that potential, the statute on attorney fees for making unsubstantiated allegations should be used by the trial courts whenever it appears parties have subverted the process by this means. Allegations of harm that prove to be unfounded subject the parent making the allegations to court costs and attorney fees. N.D.C.C. § 14–09–06.5; *Sweeney v. Sweeney,* 2002 ND 206, ¶ 18, 654 N.W.2d 407.

[¶ 33] It is improper for this Court to ignore the plain words of the statute by changing what is a matter of law, the prima facie case, into a matter of discretion:

> The legislature has provided that before there is a hearing on change of custody, the petitioner must present affidavits establishing a prima facie case justifying a modification. N.D.C.C. § 14–09–06.6(4). "Prima facie evidence" or "prima facie case" are legal terms with well-established meanings. *See Black's Law Dictionary* 579 & 1209 (7th ed.1999). The North Dakota Century Code itself specifies how it is to be interpreted. N.D.C.C. tit. 1. The Code specifies that words are to be understood in their ordinary sense unless a contrary meaning plainly appears. N.D.C.C. § 1–02–02. The Code specifies that there is no common law (judge-made law) when the law is declared by statute. N.D.C.C. § 1–01–06. Here the majority interprets prima facie evidence in a way contrary to the ordinarily understood meaning of the term, and the majority substitutes its judge-made law for the enactment of the legislature.

*Tank v. Tank,* 2004 ND 15, ¶ 52, 673 N.W.2d 622 (Sandstrom, J., dissenting).

[¶ 34] Changing the prima facie showing, which is a question of law, required by statute, to a matter of discretion is a change that, if it is to be made, should come from the legislature. Therefore, I dissent.

[¶ 35] CAROL RONNING KAPSNER