2006 ND 156

**Interest of K.H., a child.**

**Justin Schwarz, Petitioner and Appellee**

v.

**K.H., Child; Respondent and Appellant**

**and**

**K.H., Mother; and K.H., Father, Respondents.**

**No. 20050305.**

Supreme Court of North Dakota.

July 18, 2006.

Justin J. Schwarz (argued), Assistant State's Attorney, Courthouse, Bismarck, ND, for petitioner and appellee.

Susan Schmidt (argued), Bismarck, ND, for respondent and appellant K.H., Child.

KAPSNER, Justice.

[¶ 1] The juvenile K.H. ("Keegan")[1] appeals from juvenile court orders adjudicating him a delinquent child and placing

---

1. A pseudonym.

him in the custody of the North Dakota Division of Juvenile Services for a period of one year. We affirm.

## I

[¶ 2] On May 12, 2005, at approximately 3:44 a.m., Officer Clint Fuller of the Bismarck Police Department received a report that a fire was in progress at 717 Bridgeport # 4 in Bismarck and that a white car was seen in the area before the fire started. Upon arriving at the scene, Officer Fuller noticed the fire in the garage and the boat in front of the garage. An older gentleman at the scene told Officer Fuller that the person driving in the white Ford Taurus was the person who started the fire. The older gentleman was later identified by Officer Fuller. Officer Fuller testified that the informant said "that's the car. That's the car. That's the guy that started the fire." Officer Fuller proceeded to follow the vehicle noticing the car "kind of weaving within the lane and almost struck fire personnel and the fire truck as it was coming up the street to the fire."

[¶ 3] Officer Fuller stopped Keegan's vehicle, detected the odor of alcohol, and arrested Keegan. A blood test confirmed a blood-alcohol level of .15%. At approximately 5:00 a.m., investigator Chad Spotts interviewed Keegan. Keegan's mother was present during the interview. Spotts testified he gave Miranda warnings to both Keegan and his mother, that neither requested an attorney at that time, and that Keegan signed a waiver of rights and his mother signed a consent to interview.

[¶ 4] During the interview, Keegan informed Spotts that he drank the equivalent of half a bottle of Jack Daniels. Spotts said he could smell alcohol on Keegan's breath during the interview, and that

Keegan had bloodshot, watery eyes. Spotts testified Keegan spoke clearly. After the interview, Keegan was transported to a hospital for further evaluation.

[¶ 5] In May 2005, a petition was filed alleging Keegan committed arson, criminal trespass, unlawful entry into a vehicle, possession of stolen property, operating a motor vehicle under the influence of intoxicating liquor, minor in possession or consumption of alcohol, and violations of conditions of a previously entered juvenile court formal order. Keegan filed a suppression motion arguing the stop of his vehicle was unlawful because it was based on an anonymous tip and that statements made by Keegan to police officers while his mother was present should be suppressed. The juvenile court denied the suppression motion. Keegan admitted to criminal trespass, unlawful entry into a vehicle, and possession of stolen property, but denied the charge of arson. After a hearing, the juvenile court found the child committed arson and violated conditions of his probation from an order dated September 5, 2004.

[¶ 6] On appeal, Keegan argues the stop of his vehicle was improper and the evidence obtained should be suppressed because the arresting officer did not have a reasonable and articulable suspicion to support the stop. Keegan also argues statements he made to a police officer should be suppressed because he did not knowingly waive his right to an attorney.

## II

[¶ 7] Under N.D.R.Civ.P. 52(a), we review factual findings from a juvenile court under a clearly erroneous standard of review giving due regard to the opportunity of the trial court to judge the credibility of the witnesses.[2] A finding of fact

2. On March 1, 2004, we revised N.D.R.Civ.P. 52(a) to recognize that the rule also applies to

is clearly erroneous if there is no evidence to support it, if the reviewing court is left with a definite and firm conviction that a mistake has been made, or if the finding was induced by an erroneous view of the law. *Interest of D.D.*, 2006 ND 30, ¶ 18, 708 N.W.2d 900. We review questions of law de novo. *Interest of J.P.*, 2004 ND 25, ¶ 8, 674 N.W.2d 273.

### A

 [¶ 8] Keegan argues the police did not have a reasonable and articulable suspicion to stop his vehicle. To justify the stop of a moving vehicle, an officer must have a reasonable and articulable suspicion the motorist has violated or is violating the law. *City of Fargo v. Ovind*, 1998 ND 69, ¶ 8, 575 N.W.2d 901. Police may, in appropriate circumstances and in an appropriate manner, detain an individual for investigative purposes when there is no probable cause to make an arrest if a reasonable and articulable suspicion exists that criminal activity is afoot. *Terry v. Ohio*, 392 U.S. 1, 22, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); *Anderson v. Director, N.D. Dep't of Transp.*, 2005 ND 97, ¶ 8, 696 N.W.2d 918. "[T]raffic violations, even if considered common or minor, constitute prohibited conduct which provide officers with requisite suspicion for conducting investigatory stops." *Hanson v. Director, N.D. Dep't of Transp.*, 2003 ND 175, ¶ 15, 671 N.W.2d 780. The reasonable and articulable suspicion standard requires more than a "mere hunch," but less than probable cause. *Ovind*, at ¶ 8. The validity of a stop is evaluated by using an objective standard and assessing the totality of the circumstances. *Id.*

 [¶ 9] Under the totality of the circumstances in this case, Officer Fuller had a reasonable and articulable suspicion to

support the stop. Under similar facts in *City of Fargo v. Ovind*, 1998 ND 69, 575 N.W.2d 901, we stated:

> While it may make sense to require an observation of illegality or impairment in corroborating tips regarding a specific impaired driver, this type of corroboration may not be practical in the prompt investigation of the scene of a reported recent crime. Some circumstances require a police officer to act quickly in order to preserve the status quo rather than to observe the situation further.

*Id.* at ¶ 11. In *Ovind*, the officer was responding to a report of a fight, stopping the suspect's car after the officer heard an individual yell "[s]top that other car, they beat us up." *Id.* at ¶ 4. Likewise here an officer heard an on-scene witness point to Keegan's vehicle and say "[t]hat's the guy that started the fire." Officer Fuller's suspicion was further heightened by Keegan's erratic driving. Officer Fuller witnessed Keegan nearly hitting a fire truck and fire personnel.

[¶ 10] Based on the erratic driving and the witness's statement that Keegan was the person who started the fire, we conclude, under the totality of the circumstances, that Officer Fuller was justified in stopping Keegan's vehicle.

### B

[¶ 11] Keegan also argues incriminating statements he made to police officers should be suppressed. Keegan claims his mother asked whether an attorney would be needed before the interview began.

[¶ 12] A juvenile has a statutory right to representation under N.D.C.C. § 27–20–26(1):

---

juvenile matters and that "decisions of the supreme court to the contrary are to be disregarded." *See* Explanatory Note to N.D.R.Civ.P. 52(a).

a party is entitled to representation by legal counsel at custodial, post-petition, and informal adjustment stages of proceedings under this chapter.... Counsel must be provided for a child not represented by the child's parent, guardian, or custodian at custodial, post-petition, and informal adjustment stages of proceedings under this chapter.

This statute previously granted a right to counsel at "all stages of any proceedings." 1995 N.D. Sess. Laws ch. 124, § 13; *Interest of Z.C.B.*, 2003 ND 151, ¶ 15, 669 N.W.2d 478. Under the revised version of the statute, a juvenile has a right to counsel starting at "custodial" stages of proceedings. N.D.C.C. § 27–20–26(1); *see also Interest of Z.C.B.*, at ¶¶ 14–15 (stating juvenile not in custody during routine questioning following ordinary traffic stop). If an extrajudicial statement is obtained by violating this statutory right, the statement cannot be used against the child in a criminal proceeding. N.D.C.C. § 27–20–27(2); *Interest of Z.C.B.*, at ¶ 13.

[¶ 13] The statute requires appointment of counsel to represent the child if a parent does not appear and represent the child or if the interests of the child and the parent conflict. *In re R.D.B.*, 1998 ND 15, ¶ 11, 575 N.W.2d 420. A juvenile's right to counsel can be waived even if the minor is of a young age, provided the juvenile is "represented by the child's parent, guardian, or custodian." N.D.C.C. § 27–20–26(1); *see also Interest of D.S.*, 263 N.W.2d 114, 119 (N.D.1978). Keegan did not argue below and has not argued in his brief to this Court that his mother's presence during the interview was not representation for purposes of N.D.C.C. § 27–20–26(1). *See, e.g., In Interest of B.S.*, 496 N.W.2d 31, 33–34 (N.D. 1993); *In Interest of J.D.Z.*, 431 N.W.2d 272, 275 (N.D.1988); *State v. Grenz*, 243 N.W.2d 375, 380 (N.D.1976). Keegan and his mother both signed a form document. Keegan's signature followed a statement of his Miranda rights followed by an acknowledgment that he was willingly waiving his Miranda rights. His mother signed below in an area reserved for parental consent for the interview. Keegan argues his mother asked if an attorney would be needed before she signed the consent to interview and that because she did not know Keegan was a suspect in the arson case under investigation, neither she nor Keegan was able to make a knowing waiver of Keegan's right to an attorney.

[¶ 14] There was conflicting testimony on when Keegan's mother asked for counsel. Spotts testified Keegan's mother first asked if she needed an attorney after the interview was completed. Spotts responded that he "can't answer that question for her." Keegan's mother testified she asked, before she signed the consent, "do you mean we should have an attorney?" The juvenile court made a credibility finding on the conflicting testimony at issue. The court believed Keegan's mother did not inquire about an attorney before signing the consent, and found Spotts' testimony was "more credible."

[¶ 15] Our standard of review demands that we defer to the findings of the juvenile court on credibility determinations because the juvenile court has the opportunity to observe the candor and demeanor of the witness. *Interest of T.J.K.*, 1999 ND 152, ¶ 18, 598 N.W.2d 781. Keegan has not established that the juvenile court's credibility determination was clearly erroneous. Based on the juvenile court's finding, we must assume the mother did not affirmatively request an attorney before the interview began. Absent such request, we cannot say the incriminating statements should be suppressed. The statements were obtained after Keegan waived

his right to counsel and his mother gave written consent to the interview.

## III

[¶ 16] We affirm.

[¶ 17] VANDE WALLE, C.J., MAR-ING, CROTHERS, and SANDSTROM, JJ., concur.