763 N.W.2d 507 (2009)
2009 ND 46
In the Interest of J.K., a child.
Eugene Molbert, Petitioner and Appellee
v.
J.K., a child, C.M., his mother, Respondents and Appellants and
D.K., his father, Respondent.
No. 20080180.
Supreme Court of North Dakota.
April 2, 2009.
*508 T.L. Secrest, State's Attorney, Hettinger, ND, for petitioner and appellee.
Robert A. Keogh, Keogh Law Office, Dickinson, ND, for respondents and appellants.
CROTHERS, Justice.
[¶ 1] J.K. appeals the juvenile court's order adjudicating him a delinquent child *509 and placing him with the North Dakota Division of Juvenile Services until January 2009. The delinquency adjudication resulted from a finding by the juvenile court that J.K. had committed theft of property, a Class C felony. We affirm, concluding the juvenile court's finding J.K. committed the theft is not clearly erroneous.

I
[¶ 2] On May 4, 2008, a dirt bike was stolen off the back of the owner's pickup. Later that evening, M.H. admitted to stealing the dirt bike and claimed J.K. also was involved in the theft. J.K. denied being involved in the theft and stated he was helping M.H. move the dirt bike off of his father's property because he did not want to be blamed for stealing the bike.
[¶ 3] On May 12, 2008, a petition was filed with the juvenile court, alleging J.K. committed the delinquent act of theft of property. On July 2, 2008, a juvenile hearing was held to determine whether J.K. committed the theft making him a delinquent child. Numerous witnesses testified at trial about the events surrounding the theft. Alan Timm testified that on May 4, 2008, around 9 p.m. while watering his horses, he heard a dirt bike coming down the highway. Timm stated he saw M.H.'s car closely following the dirt bike because the dirt bike did not have a headlight. After recognizing the bike because it belonged to a friend, Timm said he called his friend to find out why he was riding his dirt bike in the dark. Timm's friend stated he was not riding his dirt bike, and it was at that point his friend realized someone had stolen his dirt bike off of the back of his pickup.
[¶ 4] Timm stated after learning his friend's dirt bike was stolen he followed M.H.'s car and the dirt bike until they turned into J.K.'s father's farm. Timm said he waited at the approach of the farm while M.H.'s car and the dirt bike were driven into the farm. While Timm was following the dirt bike and M.H.'s car, Timm stated he called M.H.'s mother informing her that he believed M.H. was involved in stealing his friend's dirt bike. After speaking with Timm, M.H.'s mother said she went looking for M.H. and ended up sitting at the approach of J.K.'s father's farm with Timm.
[¶ 5] At this time, J.K.'s father's girlfriend, C.A., was home at the farm; she testified when she heard a loud vehicle, she looked out the kitchen window and saw a car going up the hill to J.K.'s father's farmstead. C.A. said she then drove over to the farmstead. When she arrived, she found M.H. standing by his car and J.K. coming out of the Quonset. At this point, C.A. said the Quonset doors were open only a couple of feet and she did not go into the Quonset, but did help J.K. close the doors. C.A. stated she did not ask the boys what they were doing at the Quonset and did not notice a dirt bike in the area. According to M.H.'s testimony, the boys were at the Quonset because they were moving the dirt bike to a different location because they believed Timm knew they had taken the bike.
[¶ 6] Both Timm and M.H.'s mother said that when the boys left the farm they drove at an excessive speed and that both of them followed the boys for a little while. M.H.'s mother stated she stopped following the boys, but told Timm he should continue to follow in case something should happen to them. Timm testified he continued to follow the boys and watched while M.H.'s car spun out of control and went into the ditch. After observing the accident, Timm said he pulled over and found M.H. and J.K. in the car. Timm testified he put the boys in his vehicle and called M.H.'s father to meet him to pick up the boys. M.H.'s father said he met Timm, *510 picked up the boys and took the boys to the hospital to ensure they were okay.
[¶ 7] After hearing of the accident, Officer Sabot testified he went to the hospital to interview the boys about the stolen dirt bike. Officer Sabot stated he talked to M.H. first. Initially, M.H. told Officer Sabot that he would give him a written statement, but that he did not want to talk to him. In M.H.'s written statement, he admitted he and another person stole the dirt bike. However, M.H. refused to reveal the identity of the other individual. Eventually, M.H. spoke with Officer Sabot, telling him where the dirt bike was hidden. While M.H. was still at the hospital, Officer Sabot asked M.H. to call Officer Chapman, the officer investigating the stolen dirt bike, and to inform him the dirt bike was located in an old wooden building at J.K.'s father's farm. Officer Chapman testified when he arrived at the wooden building, prior to finding the dirt bike, he knew the dirt bike had to be nearby because of the strong smell of gasoline.
[¶ 8] After interviewing M.H., Officer Sabot talked to J.K. Officer Sabot said J.K. denied taking the dirt bike and stated he was helping M.H. move the bike off of J.K.'s father's farm because he did not want to be blamed for stealing it. Officer Sabot stated that while he was interviewing J.K., he noticed J.K.'s pants smelled of gasoline.
[¶ 9] After the boys were released from the hospital, Officer Molbert took M.H. to the sheriff's office and then to Sunrise Youth Bureau. Officer Molbert testified that on the way to Sunrise Youth Bureau, M.H. revealed J.K. was the other individual involved in stealing the dirt bike. According to M.H.'s testimony, he revealed J.K.'s identity because he realized while being handcuffed in the back of the police car that he did not want his life to be like this.
[¶ 10] J.K. testified and denied stealing the dirt bike. J.K. said on the night the dirt bike was stolen, he was at the skate park skateboarding with a couple of friends when M.H. pulled up in his car. J.K. stated his friends left when M.H. got out of his car. While they were at the skate park, M.H. told J.K. that he and another individual stole a dirt bike and hid it in a barn at J.K.'s father's farm. J.K. said he told M.H. they needed to get the dirt bike and return it to the person they took it from.
[¶ 11] J.K. testified he and M.H. left in M.H.'s car and went to his father's farm to get the dirt bike. J.K. said they drove up to the Quonset because M.H. told him the dirt bike was in a "barn," but when they got to the Quonset, M.H. told him the dirt bike was not there. J.K. said when he was coming out of the Quonset, C.A. drove up. J.K. testified C.A. helped him close the Quonset doors which were open only about two feet. J.K. said C.A. left without asking them what they were doing. After C.A. left, J.K. said they drove to the highway and waited there for a while before driving to the old wooden building on the old farmstead because they did not want C.A. to get suspicious if she saw a car drive to the old farm since nobody ever drives over there. J.K. testified they waited on the highway approach for about five minutes and then proceeded to drive slowly to the old farm. J.K. said on the way to the old farm, M.H. received but did not answer three phone calls, two from his mother and one from a friend. After M.H.'s mother called twice, J.K. said he asked M.H. if anyone knew he took the dirt bike and M.H. told him that he thought someone did. J.K. testified he became angry with M.H. and told him they were going back to town because he did not want any part of this. J.K. said they were on their way back to town when they *511 got into the car accident. J.K. stated he remembers waking up in Timm's vehicle and then having M.H.'s father take him to the hospital. J.K. said he spoke to the officer at the hospital and told him he was not involved in the theft.
[¶ 12] At the close of trial, the juvenile court found that the State had met its burden of proof beyond a reasonable doubt that J.K. violated N.D.C.C. § 12.1-23-02 because he knowingly took or exercised unauthorized control over the property of another with intent to deprive the owner. J.K. was adjudicated a delinquent child and ordered into the care, custody and control of the North Dakota Division of Juvenile Services for placement in a suitable foster care or group setting until January 1, 2009.

II
[¶ 13] Prior to March 1, 2004, we reviewed factual findings in juvenile matters under a procedure similar to the former trial de novo, with substantial weight given to the trial court's findings because of its superior position to decide questions of demeanor and credibility. Interest of D.Q., 2002 ND 188, ¶ 9, 653 N.W.2d 713. Effective March 1, 2004, N.D.R.Civ.P. 52(a) was amended to provide that "[f]indings of fact ... in juvenile matters ... shall not be set aside [on appeal] unless clearly erroneous." Since N.D.R.Civ.P. 52(a) was amended to exclude de novo review in juvenile cases, those cases applying the procedure similar to trial de novo for review of juvenile matters are superceded.
[¶ 14] "A finding of fact is clearly erroneous if there is no evidence to support it, if the reviewing court is left with a definite and firm conviction that a mistake has been made, or if the finding is induced by an erroneous view of the law." Interest of R.P., 2008 ND 39, ¶ 7, 745 N.W.2d 642. "We review questions of law de novo." Interest of K.H., 2006 ND 156, ¶ 7, 718 N.W.2d 575.
[¶ 15] J.K. allegedly committed the delinquent act of theft of property in violation of N.D.C.C. § 12.1-23-02, a Class C felony. Specifically, J.K. was alleged to have taken a dirt bike off the back of the owner's pickup. Section 27-20-29(2), N.D.C.C., requires the petitioner to prove beyond a reasonable doubt that J.K. committed the delinquent act of theft of property. An individual is guilty of theft of property if he "[k]nowingly takes or exercises unauthorized control over, or makes an unauthorized transfer of an interest in, the property of another with intent to deprive the owner thereof." N.D.C.C. § 12.1-23-02(1).
[¶ 16] J.K. argues the State failed to prove beyond a reasonable doubt that he committed the theft. J.K. contends the inconsistencies in the witnesses stories regarding the time of the events surrounding the theft and certain disputed facts preclude a fact-finder from finding he was guilty beyond a reasonable doubt.
[¶ 17] The district court's finding J.K. committed the theft is supported by the evidence and, therefore, is not clearly erroneous. "To establish theft of property under NDCC § 12.1-23-02(1), the State must prove ... [an individual] (1) knowingly (2) takes or exercises unauthorized control over, or makes an unauthorized transfer of an interest in, the property of another (3) with intent to deprive the owner thereof." State v. Johnson, 425 N.W.2d 903, 905 (N.D.1988). A person acts knowingly if "when he engages in the conduct, he knows or has a firm belief, unaccompanied by a substantial doubt, that he is doing so, whether or not it is his purpose to do so." N.D.C.C. § 12.1-02-02(1)(b). "A person's knowledge *512 depends on all the surrounding facts and circumstances and is a factual question that may be established by circumstantial evidence." State v. Bertram, 2006 ND 10, ¶ 7, 708 N.W.2d 913.
[¶ 18] The evidence establishes J.K. knew he was exercising unauthorized control over the dirt bike. The owner of the dirt bike testified that neither M.H. nor J.K. had permission to drive the dirt bike. M.H. testified he and J.K. decided to steal the dirt bike from the back of the pickup. M.H. said that after deciding to steal the dirt bike, they went to his house to get knives to enable them to cut the straps tying the dirt bike to the pickup. M.H. testified that after getting a pocket knife and a hunting knife, they drove back to the pickup, cut the straps, lifted the dirt bike off the pickup and pushed the dirt bike until it started. M.H. stated that J.K. then jumped onto the bike and drove it to his father's farm. M.H. testified he closely followed J.K. with his car because the dirt bike did not have a headlight and it was getting dark outside. M.H.'s testimony establishes J.K. knew he was exercising unauthorized control of another person's property.
[¶ 19] We believe the State also produced sufficient evidence establishing J.K. intended to deprive the owner of the dirt bike. "[Section 12.1-02-02(1)(a), N.D.C.C.,] defines an intentional act as conduct that a person engages in with a purpose to do so." Johnson, 425 N.W.2d at 906. M.H.'s testimony proves J.K. intended to deprive the owner of the dirt bike because it establishes J.K. tried to hide the bike from the owner by taking the bike out to J.K.'s father's farm and by hiding it in the Quonset. Since M.H. and J.K. believed Timm knew they had stolen the bike, they moved the bike from the Quonset to an old wooden building on J.K.'s father's old farmstead in an effort to further conceal the dirt bike. M.H.'s testimony proves J.K. intended to deprive the owner of the dirt bike.
[¶ 20] However, because M.H. and J.K. were accomplices, the juvenile court's finding that J.K. committed the theft must be based upon more than M.H.'s testimony. Section 29-21-14, N.D.C.C., states accomplice testimony must be corroborated by "such other evidence as tends to connect the defendant with the commission of the offense, and the corroboration is not sufficient if it merely shows the commission of the offense, or the circumstances thereof." The purpose of corroborative evidence is "to demonstrate an accomplice is a reliable and credible witness." State v. Falconer, 2007 ND 89, ¶ 21, 732 N.W.2d 703. "We have said, every fact given by an accomplice need not be corroborated. All that is needed is other evidence corroborating one or more material details or facts which tend to connect the defendant with the crime." Id.
[¶ 21] In this case, the record is replete with evidence corroborating M.H.'s testimony and connecting J.K. to the commission of the theft. Numerous witnesses testified to seeing M.H. and J.K. driving together in M.H.'s car close to the time the dirt bike was stolen and on the same street where the dirt bike was located. Timm testified he saw M.H.'s car following the dirt bike providing the driver with light because it was dark and the dirt bike did not have a headlight. Timm also stated he followed M.H.'s car and the dirt bike until they drove into J.K.'s father's farm. C.A. said she spoke with J.K. and M.H. when they were at the Quonset on J.K.'s father's farm. Timm and M.H.'s mother stated they saw M.H.'s vehicle leave J.K.'s father's farm and both of them followed the vehicle for a while. Timm testified that while he was following M.H.'s car, the car *513 was involved in an accident. Timm said he pulled over to make sure everyone was alright and saw M.H. and J.K. were in M.H.'s car. Officer Chapman testified to finding the dirt bike where M.H. said they hid it, in an old wooden building on J.K.'s father's farm. Officer Chapman also stated when he walked into the building where the dirt bike was located, he smelled gas first and then saw the dirt bike, and Officer Sabot testified when he arrived at the hospital, J.K.'s pants smelled of gasoline. Because sufficient evidence exists corroborating M.H.'s testimony and connecting J.K. with the theft, the juvenile court had sufficient evidence to find J.K. committed the theft.
[¶ 22] J.K. argues certain facts precluded the juvenile court from finding he committed the theft beyond a reasonable doubt. First, J.K. contends the inconsistencies in the times given by the witnesses in describing the events of May 4, 2008 preclude a guilty finding. In its oral findings, the juvenile court acknowledged the time line given by the witnesses was confusing, but stated the confusion was the result of the individuals not wearing watches on the day in question. Our review of the record shows the witnesses were asked to estimate the time at which a variety of events in the case occurred. Our review also reveals the inconsistencies in the times given by the witnesses were minor and alone did not preclude the juvenile court from finding the evidence established J.K. committed the theft beyond a reasonable doubt.
[¶ 23] Second, J.K. claims the evidence established the pegs on the dirt bike's footrests were so sharp that they would have ripped up his tennis shoes. Based upon this evidence, J.K. argues the juvenile court could not have found him guilty beyond a reasonable doubt because his tennis shoes were not damaged, proving he did not ride or steal the dirt bike. The juvenile court acknowledged J.K.'s tennis shoes were not damaged. In its oral findings, the court found that because J.K. did not drive the bike in a motocross race where the pegs would have been used to grab the shoes, but rather drove the bike on paved roads, "the lack of damage to the shoes in and of itself doesn't prove anything." The evidence supports the juvenile court's finding because the testimony established the duration of the dirt bike ride was short and therefore, the pegs would not have necessarily damaged a pair of tennis shoes. The juvenile court's finding is not clearly erroneous because the evidence supports it.
[¶ 24] Third, J.K. argues that the juvenile court was precluded from finding him guilty beyond a reasonable doubt because the evidence established he had knee surgery in February 2008 and that if he had ridden the dirt bike, he would have had difficulty walking and would have been limping. J.K. contends the evidence establishes he did not steal the dirt bike because he did not have difficulty walking and was not limping at the emergency room. In finding J.K. committed the theft, the juvenile court stated it looked at the medical records concerning J.K.'s knee and found nothing in the medical reports indicated J.K. was unable to ride or drive a dirt bike. The court stated, "He was walking that day. He was riding skateboard. Again, this was not a motocross race that he was driving that motorcycleor alleged to drive that motorcycle. So, again, that doesn't prove or disprove anything." The evidence supports the court's finding because the medical records do not state that J.K. was unable to ride a dirt bike, and although J.K. was not limping at the hospital, M.H. testified J.K. told him "his knee was killing him," after J.K. rode the dirt *514 bike to his father's farm. The juvenile court's finding is not clearly erroneous.
[¶ 25] Finally, J.K. claims the juvenile court erred in finding he committed the theft because whether J.K.'s pants smelled of gasoline and whether the Quonset doors were open far enough for a dirt bike to fit through were disputed. It is the job of the fact-finder to resolve those disputes, if possible. Here, the juvenile court resolved those disputes and determined the State proved beyond a reasonable doubt that J.K. had committed the theft.
[¶ 26] This case required the juvenile court to make credibility determinations. In making those determinations, the juvenile court specifically stated it believed M.H.'s testimony. The court stated:
"from the beginning [M.H.] had admitted that he was involved in taking the bike. There appears to be no reason for him to include [J.K.] except for his interesting comment that he made when he said that I looked down at the handcuffs and decided this wasn't where I wanted to be, and that's not the type of life that he wanted to lead."
The juvenile court said it did not believe J.K.'s testimony and cited inconsistencies in J.K.'s stories about the theft. We have consistently stated that under a clearly erroneous standard of review, "we defer to the findings of the juvenile court on credibility determinations because the juvenile court has the opportunity to observe the candor and demeanor of the witness." Interest of K.H., 2006 ND 156, ¶ 15, 718 N.W.2d 575. The juvenile court's findings J.K. committed the theft is not clearly erroneous because it was based upon the evidence and upon the court's credibility determinations.

III
[¶ 27] J.K. argues the juvenile court erred in determining he was in need of rehabilitation. However, J.K. raises this issue in his statement of the issues but then fails to brief the issue. We will not consider issues not adequately briefed. State v. Loughead, 2007 ND 16, ¶ 10, 726 N.W.2d 859. Accordingly, this claim fails.

IV
[¶ 28] J.K. argues the juvenile court erred by failing to state in its written findings that it found J.K. committed the theft "beyond a reasonable doubt." Section 27-20-29(2), N.D.C.C., requires the petitioner to prove beyond a reasonable doubt that J.K. committed the delinquent act of theft of property. We have held a juvenile court's oral findings may be used to explain the juvenile court's written decision. Interest of T.T., 2004 ND 138, ¶ 24, 681 N.W.2d 779. In its oral findings, the juvenile court stated that it found "that the State has met its burden of proof beyond a reasonable doubt in proving this crime." The juvenile court's failure to state in its written findings that it found J.K. committed the theft beyond a reasonable doubt was not error because the juvenile court's oral findings establish the court applied the correct standard of proof in determining J.K. committed the theft.

V
[¶ 29] The juvenile court's order adjudicating J.K. a delinquent child is not clearly erroneous because the evidence supports the juvenile court's finding that J.K. committed the theft. The juvenile court's order is affirmed.
[¶ 30] GERALD W. VANDE WALLE, C.J., MARY MUEHLEN MARING, CAROL RONNING KAPSNER, and DALE V. SANDSTROM, JJ., concur.