2009 ND 162

**Britt GREEN, Plaintiff and Appellant**

v.

**Lucy A. GREEN, Defendant and Appellee**

**No. 20080284.**

Supreme Court of North Dakota.

Sept. 16, 2009.

Camille O'Kara Hann (argued), Hann Law PLLC, Dickinson, ND, for plaintiff and appellant.

Jennifer Carol Nelson (argued) and Thomas Myron Jackson (appeared), Legal Services of North Dakota, Bismarck, ND, for defendant and appellee.

CROTHERS, Justice.

[¶ 1] Britt Green appeals from the district court's order denying him an evidentiary hearing on his motion for a change of custody. We reverse the district court's order and remand for an evidentiary hearing on the motion, concluding Britt Green established a prima facie case entitling him to an evidentiary hearing.

I

[¶ 2] Britt Green and Lucy Green were divorced in May 2007. One child was born of the marriage, B.G. Lucy Green also has two other children whom Britt Green adopted, one of whom was still a minor at the time the parties divorced. The parties stipulated to the divorce judgment, giving Lucy Green physical custody of the children and allowing her to relocate with the children to Nebraska. The divorce judgment gave Britt Green liberal visitation, providing him summer visitation with B.G. commencing "one week following [B.G.'s] release from school in the spring until one week prior to two weeks prior to commencement of school in the fall." B.G. spent the 2007 and 2008 summers with Britt Green.

[¶ 3] In August 2008, Britt Green filed a motion to amend the divorce judgment to change custody of B.G. from Lucy Green to Britt Green. In Britt Green's affidavit, he alleged B.G. expressed a desire to reside with him because Lucy Green drinks excessively, calls her derogatory names, leaves her unsupervised overnight and fails to lock their house doors at night. In B.G.'s affidavit, she also states that she does not feel safe at her mother's house because her mother fails to lock their doors, drinks to excess and leaves her and her sister alone overnight. B.G.'s affidavit also claims that when her mother drinks she calls B.G. derogatory names, making B.G. feel sad and uncomfortable. B.G. said she is afraid when her mother drinks because she does not always come home and she is afraid her mother will be in an accident.

[¶ 4] Lucy Green opposed Britt Green's motion for a change of custody. In September 2008, without setting a date for an evidentiary hearing, the district court denied Britt Green's motion for a change of custody. In denying Britt Green's motion for a change of custody, the court stated heightened requirements were placed on Britt Green because he was moving for a custody modification within two years from the date the existing custody order was issued. The district court concluded Britt Green did not meet the heightened requirements because he did not "specifically address on what basis he claims [B.G.'s] emotional development might be impaired."

II

[¶ 5] In *Lagro v. Lagro*, 2005 ND 151, ¶ 14, 703 N.W.2d 322, a plurality of this Court held that review of the denial of an evidentiary hearing on change of custody is reviewed under an abuse-of-discretion standard. After further review, we conclude the appropriate standard of review to be applied when reviewing the denial of an evidentiary hearing on change of custody is de novo. De novo is the appropriate standard of review because a party moving to change custody, when less than two years has passed, is required to

establish a prima facie case. N.D.C.C. § 14–09–06.6(4). We have held that the determination whether a prima facie case has been established is a question of law. *O'Neill v. O'Neill*, 2000 ND 200, ¶ 8, 619 N.W.2d 855; *Lagro*, at ¶ 29 (Kapsner, J., dissenting). Questions of law are reviewed de novo. *Interest of J.K.*, 2009 ND 46, ¶ 14, 763 N.W.2d 507. To the extent cases reflect abuse of discretion as the standard when reviewing the denial of an evidentiary hearing on a change of custody motion made within two years of the prior order establishing custody, they are overruled.

[¶ 6] Britt Green argues the district court erred when it failed to grant him an evidentiary hearing because he established a prima facie case. Britt Green claims the three affidavits attached to his motion for change of custody provide first-hand knowledge of the facts alleged in the affidavits and establish that B.G. lives in an environment that may be endangering her emotional health.

[¶ 7] Section 14–09–06.6(5), N.D.C.C., states:

"The court may not modify a prior custody order within the two-year period following the date of entry of an order establishing custody unless the court finds the modification is necessary to serve the best interest of the child and:

a. The persistent and willful denial or interference with visitation;

b. The child's present environment may endanger the child's physical or emotional health or impair the child's emotional development; or

c. The primary physical care of the child has changed to the other parent for longer than six months."

Section 14–09–06.6(4), N.D.C.C., requires:

"A party seeking modification of a custody order shall serve and file moving papers and supporting affidavits and shall give notice to the other party to the proceeding who may serve and file a response and opposing affidavits. The court shall consider the motion on briefs and without oral argument or evidentiary hearing and shall deny the motion unless the court finds the moving party has established a prima facie case justifying a modification. If a prima facie case is established, the court shall set a date for an evidentiary hearing."

The burden to establish a prima facie case is on the moving party. N.D.C.C. § 14–09–06.6(8). In *Frueh v. Frueh*, we stated:

"A prima facie case does not require facts which, if proved, would mandate a change of custody as a matter of law. A prima facie case only requires facts which, if proved at an evidentiary hearing, would support a change of custody that could be affirmed if appealed. A prima facie case is only 'enough evidence to allow the fact-trier to infer the fact at issue and rule in the party's favor.' It is a bare minimum."

2008 ND 26, ¶ 6, 745 N.W.2d 362 (citation omitted). *See also Tank v. Tank*, 2004 ND 15, ¶ 9, 673 N.W.2d 622.

[¶ 8] A party opposing a custody modification can rebut a prima facie case by presenting evidence demonstrating the moving party is not entitled to modification. *Frueh*, at ¶ 7. "When the opposing party presents counter-affidavits that conclusively show the allegations of the moving party have no credibility, or when the movant's allegations are, on their face, insufficient to justify custody modification, the district court, under N.D.C.C. § 14–09–06.6(4), can find the moving party has not established a prima facie case and deny the motion without an evidentiary hearing." *Frueh*, at ¶ 7. When determining whether a prima facie case has been established, the court cannot weigh the conflicting allegations. *Id.* at ¶ 13.

[¶ 9] Lucy Green argues Britt Green is not entitled to an evidentiary hearing because he brought his motion under the wrong statute. We agree Britt Green's custody modification motion incorrectly cites N.D.C.C. § 14–09–06.6(6), which allows the court to modify custody if more than two years have passed since the existing custody order was issued. However, both Britt Green's motion and his affidavit allege a modification of custody is warranted because B.G.'s "present environment is endangering her emotional health and places her at risk for impaired emotional development." Therefore, although Britt Green cites the wrong statute in his motion, he correctly alleges one of the grounds listed in N.D.C.C. § 14–09–06.6(5), allowing a modification of custody when less than two years have passed since entry of the existing custody order.

[¶ 10] Britt Green argues the district court erred in denying him an evidentiary hearing because he established B.G.'s present environment is endangering her emotional health or impairing her emotional development. In determining an evidentiary hearing was not warranted, the district court correctly recognized that heightened requirements are placed on a movant bringing a motion to change custody when less than two years have passed since the existing custody order was issued. The district court determined Britt Green did not meet the heightened requirements entitling him to an evidentiary hearing because Britt Green did not "specifically address on what basis he claims [B.G.'s] emotional development might be impaired."

[¶ 11] Section 14–09–06.6(5)(b), N.D.C.C., allows the court to modify custody when less than two years have passed if the court finds that "[t]he child's present environment may endanger the child's physical or emotional health or impair the child's emotional development." To establish B.G.'s present environment may be endangering B.G.'s emotional health or impairing her emotional development, Britt Green submitted his own affidavit, an affidavit of his wife, Terri Green, and B.G.'s affidavit. In Britt Green's affidavit, he alleges B.G.'s present environment is endangering her emotional health because B.G. told him that when Lucy Green drinks, she calls B.G. derogatory names. Britt Green's affidavit also discusses his concern about the negative effect Lucy Green's drinking may have on B.G. Terri Green's affidavit alleges B.G. said she wanted to live with her and Britt Green because they do not drink, they eat dinner at home as a family and B.G. enjoys spending time with her step-brothers.

[¶ 12] In B.G.'s affidavit, she states she wants to live with her father because she does not feel safe with her mother since her mother fails to lock their house doors, drinks a lot and leaves B.G. and her sister alone overnight while her mother sleeps over at her boyfriend's house. B.G. also states when her mother drinks, she calls her derogatory names, making her "feel very sad and uncomfortable." B.G. said she is afraid when her mother drinks because her mother does not always come home and she is afraid her mother will get into an accident. B.G. claims her mother ignores her when she tells her mother that she is afraid of being left alone. B.G. also stated that one night in January 2008, she woke up in the middle of the night and on her way to the bathroom she saw a strange man sleeping in their recliner in the living room. B.G. claims she woke her mother up and her mother woke up the stranger and told him he could sleep there for the night but he had to leave in the morning. B.G. said she was especially afraid this night because her bedroom is

next to the living room and her room does not have a lock on the door.

[¶ 13] We have stated that "allegations alone do not establish prima facie evidence requiring an evidentiary hearing." *Frueh*, 2008 ND 26, ¶ 6, 745 N.W.2d 362. To establish a prima facie case entitling the movant to an evidentiary hearing, the affidavits submitted by the movant must be competent. *Id.* We have held that "competence usually requires that the witness have first-hand knowledge, and witnesses are generally not competent to testify to what they suspect the facts are." *Id.* "Affidavits are not competent when they fail to show a basis of actual personal knowledge or if they state conclusions without the support of evidentiary facts." *Id.*

[¶ 14] The affidavits submitted by Britt Green are competent because B.G.'s affidavit is based on her first-hand knowledge and because B.G.'s affidavit provides factual support for the allegations contained in Britt Green's and Terri Green's affidavits. We conclude Britt Green has provided sufficient competent evidence to establish a prima facie case warranting an evidentiary hearing on his motion for a change of custody.

## III

[¶ 15] Because of our conclusion, it is unnecessary to address the remaining issues raised by the parties. We reverse the district court's order and remand for an evidentiary hearing on the motion, concluding Britt Green established a prima facie case entitling him to an evidentiary hearing.

[¶ 16] CAROL RONNING KAPSNER and DALE V. SANDSTROM, JJ., concur.

SANDSTROM, Justice, concurring.

[¶ 17] The most consequential of this Court's disagreements relating to N.D.C.C. § 14–09–06.6(4) has related to the type of evidence required to establish a prima facie case. I have strongly advocated that the evidence must be competent and admissible. *See Frueh v. Frueh*, 2008 ND 26, ¶ 6, 745 N.W.2d 362; *Lagro v. Lagro*, 2005 ND 151, ¶¶ 15, 18, 703 N.W.2d 322; *Tank v. Tank*, 2004 ND 15, ¶¶ 53, 55, 673 N.W.2d 622 (Sandstrom, J., dissenting). In other words, the person must normally have personal, firsthand knowledge. This has had an effect in cases, and without this requirement, cases would have been decided differently. *See, e.g., Lagro*, 2005 ND 151, ¶¶ 23, 24, 703 N.W.2d 322 ("The lack of detail and competency in Leah Lagro's allegations make them insufficient on their face to establish a prima facie case for custody modification. We affirm the district court's order[.]").

[¶ 18] The standard of review for this Court's evaluation of a district court's determination of whether a prima facie case has been established has been the subject of more esoteric debate. Some have contended that the standard should be de novo review of a question of law, and others have contended that the standard should be an abuse of discretion. Of course, a court abuses its discretion if it misinterprets or misapplies the law. I have previously advocated for an abuse of discretion standard. In none of our prior cases has a majority of this Court signed an opinion establishing an abuse of discretion standard.

[¶ 19] Before *Lagro*, a majority of this Court had clearly said that whether a prima facie case has been made is a matter of law subject to de novo review. *Hawley v. LaRocque*, 2004 ND 215, ¶ 4, 689 N.W.2d 386; *O'Neill v. O'Neill*, 2000 ND 200, ¶ 8,

619 N.W.2d 855; *Quarne v. Quarne*, 1999 ND 188, ¶ 12, 601 N.W.2d 256.

[¶ 20] In *Lagro*, 2005 ND 151, 703 N.W.2d 322, a case with only four justices participating, the opinion that I authored, and in which Justice Maring joined, advocated and sought to establish abuse of discretion as the standard of review for the Court. One justice dissented, and Chief Justice VandeWalle—without explanation—concurred in the result, withholding a third vote for a new standard. The result would have been the same in the case under either standard.

[¶ 21] In *Lausen v. Hertz*, 2006 ND 101, 714 N.W.2d 57; *Dietz v. Dietz*, 2007 ND 84, 733 N.W.2d 225; and *Kourajian v. Kourajian*, 2008 ND 8, 744 N.W.2d 274, the Court noted the divided view on the standard of review and said the result would be the same under either standard.

[¶ 22] In *Frueh*, 2008 ND 26, 745 N.W.2d 362, I again wrote an opinion that would have established abuse of discretion as the standard. While the result would have been the same under either standard, two justices dissented from the standard. This time, Chief Justice VandeWalle—again without explanation—signed the opinion I authored. But this time it was Justice Maring who concurred specially, denying the opinion majority status. Justice Maring did cite *Lagro* as having established that "[t]he question of whether to grant an evidentiary hearing rests in the discretion of the trial court." *Frueh*, 2008 ND 26, ¶ 20, 745 N.W.2d 362 (Maring, J., specially concurring in the result). But this statement was in error because *Lagro* was only a plurality opinion and not a majority opinion, and I believe the statement was not a fair summary of what I had written in *Lagro*. I had thought the question should have been largely a question of law with a thin layer of discretion coming into play in only a few cases, re-membering that a court abuses its discretion when it misinterprets or misapplies the law. I have never thought the granting of an evidentiary hearing should be a matter of unfettered discretion.

[¶ 23] On reflection, I believe the de novo review of a question of law standard in applications under N.D.C.C. § 14–09–06.6(4) brings us much closer to the intent of the legislation and certainly closer than the largely unfettered discretion suggested.

[¶ 24]   DALE V. SANDSTROM

VANDE WALLE, Chief Justice, concurring and dissenting.

[¶ 25] I would adhere to the standard of review the majority of this Court applied in *Frueh v. Frueh*, 2008 ND 26, 745 N.W.2d 362, for the reasons set forth in Justice Maring's dissenting opinion. I therefore dissent from that part of the majority opinion which embraces a de novo standard of review in determining whether or not an evidentiary hearing on the motion for change of custody should have been granted.

[¶ 26] Nevertheless, applying the abuse of discretion standard, I concur in the result reached by the majority opinion. A custodial parent's life style may endanger a child's emotional and physical health and safety. I believe the allegations contained in the affidavits filed in this case deserve a hearing. Although I recognize that "artful" pleading by an adroit lawyer can turn a minor matter into a major issue, sanctions under Rule 11, N.D.R.Civ.P., are available and should be imposed for those allegations which have no evidentiary support.

[¶ 27]   GERALD W. VANDE WALLE, C.J.

MARING, Justice, dissenting.

[¶ 28] I respectfully dissent. The majority reverses the standard of review our Court enunciated in *Lagro v. Lagro,* 2005 ND 151, 703 N.W.2d 322, and *Frueh v. Frueh,* 2008 ND 26, 745 N.W.2d 362. Applying the new standard of review, the majority next concludes that the father has established a prima facie case for modification of custody and remands for the trial court to hold an evidentiary hearing. I disagree.

[¶ 29] Our Court stated in *Guskjolen v. Guskjolen* that the clearly erroneous standard of review applies to our Court's review of a trial court's determination of a motion to modify a custody award. 391 N.W.2d 639, 641 (N.D.1986). This is a highly deferential standard of review. Under N.D.C.C. § 14–09–06.6(4), a party seeking a custody modification must establish a prima facie case justifying a modification before even being entitled to an evidentiary hearing on a motion to modify custody.

[¶ 30] In *Lagro,* our Court considered the standard of review of a trial court's decision to deny an evidentiary hearing on a motion to modify custody and concluded the appropriate standard of review was an abuse of discretion. 2005 ND 151, 703 N.W.2d 322. The decision of our Court in *Lagro,* however, was participated in by only four members of the Court. *Id.* Two members concurred, one member concurred in the result, and one member dissented. *Id.* Subsequent to *Lagro,* our Court applied both an abuse-of-discretion standard and de novo standard for its review of the denial of an evidentiary hearing in *Lausen v. Hertz,* 2006 ND 101, ¶¶ 7–8, 714 N.W.2d 57, and *Kourajian v. Kourajian,* 2008 ND 8, ¶ 10, 744 N.W.2d 274.

[¶ 31] However, in *Frueh,* a clear majority of our Court held: "We review the denial of an evidentiary hearing on change of custody under an abuse-of-discretion standard. A district court abuses its discretion if it misinterprets or misapplies the law." 2008 ND 26, ¶ 8, 745 N.W.2d 362 (citations omitted). Justice Sandstrom authored both *Lagro* and *Frueh. See Lagro,* 2005 ND 151, 703 N.W.2d 322; *Frueh,* 2008 ND 26, 745 N.W.2d 362. I am of the opinion that our Court's decision in *Frueh* on the standard of review for a denial of an evidentiary hearing by a trial court on a motion to modify custody was precedent, within the rule of stare decisis, because it was an opinion of a majority of our Court directly on the particular question.

[¶ 32] In *Frueh,* there was a deliberate and unqualified agreement by a majority of the Court on the standard of review. *See* 2008 ND 26, ¶ 8, 745 N.W.2d 362 (citations omitted). Our Court has addressed the rule of stare decisis stating:

> The rule of stare decisis is a rule of policy grounded on the theory that when a legal principle is accepted and established, rights may accrue under it and security and certainty require that the principle be recognized and followed thereafter even though it later be found to be not legally sound. To a certain extent this is true. But the rule is not sacrosanct. Whether or not a holding shall be adhered to or modified or overruled, is a question within the discretion of the court under the circumstances of the case under consideration.

*Otter Tail Power Co. v. Von Bank,* 8 N.W.2d 599, 607 72 N.D. 497, 513 (1942) (citing *Hertz v. Woodman,* 218 U.S. 205, 30 S.Ct. 621, 54 L.Ed. 1001 (1910)).

[¶ 33] We must "acknowledge the importance of the rule of stare decisis, grounded upon the theory that when a legal principle is accepted and rights may accrue under it, security and certainty require the principle be recognized and fol-

lowed thereafter." *Interest of C.R.C.*, 2001 ND 83, ¶ 39, 625 N.W.2d 533 (Neumann, J., concurring).

[¶ 34] The majority opinion provides no analysis of why our Court is abandoning our precedent on this issue. There is no analysis of whether there has been a change in the law of our State; there is no analysis indicating a review of other courts' decisions or a change in the trend of the law; and there is no indication that the standard is obsolete. There are no compelling or thoughtful arguments made for our Court to ignore the rule of stare decisis. Neither of the parties argued our Court should overrule its standard of review. The only reason we have overruled our standard of review is that the justice who authored *Lagro* and *Frueh* has decided to change his mind. This decision cannot be said to further the objective of stare decisis, which is to provide uniformity, certainty, and stability in the law. If we get a new justice on the court, will the standard change again? Our Court appears to be a court of men rather than a court of law.

[¶ 35] In *Lagro*, Justice Sandstrom acknowledged that a majority of the Court had previously established a de novo standard of review when deciding whether a prima facie case is established requiring an evidentiary hearing. 2005 ND 151, ¶ 13, 703 N.W.2d 322 (citing *Hawley v. LaRocque*, 2004 ND 215, ¶ 4, 689 N.W.2d 386; *Tank v. Tank*, 2004 ND 15, ¶ 46, 673 N.W.2d 622 (Maring, J., dissenting)). He reasoned the standard should be changed to an abuse of discretion:

> The legislature enacted N.D.C.C. § 14–09–06.6 to address the frequency of child custody disputes. 1997 N.D. Sess. Laws ch. 149, § 1. We have held:
>
>> The purpose of the legislation was to curtail repeat custody litigation. It is the product of the 1995 Joint Family Law Task Force formed by order of

this Court at the request of the State Bar Association. Testifying on the legislation before the Senate Judiciary Committee, Chair Sherry Mills Moore explained the object of the proposed legislation:

>> With SB 2167 we are trying to put more stability in the lives of children who are the object of a custody dispute by slowing the revolving door to the courthouse....
>>
>> .... The decision about custody, and the process attendant to making that decision are of their very nature painful, disruptive, and destabilizing....
>>
>> ....
>>
>> Under SB 2167, for a period of two years following a custody determination there is something of a moratorium for the family. The custody-changing process cannot be initiated except in some specific and necessary situations.
>
> *Hearing on SB 2167 before the Senate Judiciary Committee*, 55th N.D. Leg. Sess. (Jan. 21, 1997).

> *Quarne v. Quarne*, 1999 ND 188, ¶ 9, 601 N.W.2d 256.

> ....

North Dakota patterned its affidavit procedure to modify custody within two years of a prior consideration on Minnesota's statute. Joint Task Force on Family Law, *Summary Report* (June 17, 1996). Minnesota employs an abuse-of-discretion standard in reviewing the denial of an evidentiary hearing on change of custody. *In re Weber*, 653 N.W.2d 804, 809 (Minn.Ct.App.2002); *Valentine v. Lutz*, 512 N.W.2d 868, 872 (Minn. 1994); *see also Smith v. Smith*, 508 N.W.2d 222, 226–27 (Minn.Ct.App.1993); *Nice–Petersen v. Nice–Petersen*, 310 N.W.2d 471, 472 (Minn.1981).

Our North Dakota statute requires not only a prima facie case but also provides the opposing party may file affidavits, and it requires the court to "deny the motion unless the court *finds* the moving party has established a prima facie case *justifying* a modification." N.D.C.C. § 14–09–06.6(4) (emphasis added). The word "finds" reflects a degree of weighing of conflicting evidence, and the word "justifying" reflects "to show … to be just or right." *The Random House Dictionary of the English Language* 719, 1040 (2d ed. 1987); *see also Black's Law Dictionary* 882–83 (8th ed. 2004). In view of the statutory language, and consistent with the legislative history, our review of the denial of an evidentiary hearing on change of custody will be under an abuse-of-discretion standard. *Tank* and *Hawley* are superseded to the extent they established a de novo review of a denial of an evidentiary hearing. *Lagro,* at ¶¶ 11, 13–14. Our Court applied the abuse-of-discretion standard of review in *Lagro. Id.* at ¶ 14. We outlined our standard for establishing a prima facie case and concluded the affidavits did not provide sufficient evidence to create a prima facie case that the child's living environment with his father may endanger his physical or emotional health or impair his emotional development. *Id.* at ¶ 21. Our Court affirmed the trial court's denial of an evidentiary hearing. *See id.* at ¶¶ 21, 24.

[¶ 36] In my dissents in *Mock v. Mock* and *Tank,* I have contended that our statute is patterned after the restrictive provisions of the Uniform Marriage and Divorce Act and the Minnesota statute on affidavit procedure for modification. *See Mock,* 2004 ND 14, ¶¶ 27–28, 31, 673 N.W.2d 635 (citing the Uniform Marriage and Divorce Act § 410, 9A U.L.A. 2 (Supp.2003); Minn. Stat. § 518.185 (2002)); *Tank,* 2004 ND 15,

¶¶ 44–46, 48, 673 N.W.2d 622 (citing Minn. Stat. § 518.185 (2002)). The purpose for the affidavit practice is to "discourage contests over temporary custody and prevent repeated and insubstantial motions for modifications." Uniform Marriage and Divorce Act § 410, Comment, 9A U.L.A. 538, 539 (Supp.2003). Our legislature has rigorously limited the grounds for modification of custody within two years of the date of the custody order. *See* N.D.C.C. § 14–09–06.6(5). I continue to be of the opinion that, in light of how easily a good lawyer can draft an affidavit to meet the *Tank* prima facie standard, I believe we must require that the affidavit contain first hand knowledge; specificity and detail; facts that support a material and continuing change in the child's circumstances; and when endangerment is alleged, facts that show a "significant degree of danger" to establish endangerment to the emotional health and development of the child. *See Mock,* 2004 ND 14, ¶ 34, 673 N.W.2d 635 (Maring, J., dissenting); *see also Kelly v. Kelly,* 2002 ND 37, ¶¶ 44–52, 640 N.W.2d 38 (Maring, J., concurring in the result). *See also* Robert E. Oliphant, *Children in the Law Issues: Contributors Redefining a Statute Out of Existence: Minnesota's View of When A Custody Modification Hearing Can Be Held,* 26 Wm. Mitchell L.Rev. 711 (2000) (explaining that, since the prima facie burden is so low, a lawyer with minimal drafting ability will be able to persuade a court to grant a hearing, and concluding the prima facie burden is inconsistent with the purpose of the Minnesota statute and the Uniform Marriage and Divorce Act). Therefore, for us to abandon the abuse-of-discretion standard of review is another step toward our failure to adhere to the legislative purpose of N.D.C.C. § 14–09–06.6. I would continue to adhere to our precedent and

apply an abuse-of-discretion standard of review.

[¶ 37] In the present case, Britt Green and Lucy Green divorced in May 2007. Lucy Green was awarded physical custody of the parties' minor children. In August 2008, Britt Green filed a motion to modify custody of the minor child. In his motion, Britt Green claimed that there was a material change in circumstances since the divorce because the child's "present environment is endangering her emotional health and places her at risk for impaired emotional development" and the child "is a mature child who has expressed a preference to reside with her father." The minor child was twelve years old at the time of the hearing on the motion. The parties' minor child signed an affidavit in which she stated that she would like to live with her father, Britt Green; she likes living in Scranton, North Dakota; she likes the school in Scranton because she has more friends and classmates in Scranton and there are classes offered that are not offered in Oxford; she has a horse named Scooter in Scranton and does not have a horse in Oxford; it is easier to talk to her dad; her mom goes to the bar every day; sometimes her mom just stops to buy beer to bring home; other times she stays at the bar and drinks; her mom drinks a lot; when her mom is drinking, her mom calls her filthy names which make her feel sad and uncomfortable; her mom has a boyfriend; approximately five times her mom has stayed overnight at his house leaving her at home alone with her fifteen-year-old sister; she is scared when her mom does not come home; she is scared and worried because her mom is drinking and driving and afraid her mom will be in an accident; her uncle and aunt used to live within a mile and she used to spend a lot of time there, but they have moved to the country; her sister is definitely her mom's favorite child; she and her sister fight a lot; when she tells her mom that her sister slaps her and calls her names, her sister denies it, and her mom believes her sister; her mom hates her dad and so does her sister, so her sister gets what she wants; in January 2008, she woke up in the middle of the night and saw a stranger sitting in their living room so she woke up her mom, who did not know the man, but who let the man sleep there until morning; her mom does not lock their house doors and she does not feel safe in Oxford; her dad locks the doors in Scranton and is home at night.

[¶ 38] The trial court concluded that these facts were not sufficient to infer the child's emotional health or development were endangered by the present environment. The trial court decided, based on the affidavits, there was not sufficient evidence from which it could infer the mom's home endangered the child's emotional health or impaired the child's emotional development. The issue is whether the child's statements that she does not like her mother drinking, that she is scared and worried about her mother when she is not home, that she is scared and does not feel safe because her mom does not lock the doors, and that she feels sad and uncomfortable when her mom calls her filthy names rise to the level of evidence that would support on appeal to our Court an affirmance of a modification based on an environment that endangers the child's emotional health. Would our Court affirm a trial court's modification of custody based on a court's finding that these facts establish the child's emotional health is endangered? The trial court concluded that this evidence does not justify such an affirmative conclusion:

"[The father] has presented no allegation of child abuse or physical harm and the allegations regarding possible harm to the child's emotional health or development do not rise to a level sufficient

for an exception to the law prohibiting a motion to modify custody when less than two years have passed."

[¶ 39] The trial court prepared a thorough and accurate order citing our court's case law on the purpose of the provision requiring a court to determine whether a hearing should be even held within two years following a custody determination and on the movant's heightened burden of proof. The majority conclusion really is based on its own disapproval of the mother's choice of life style and its own personal values. That is not the standard the legislature has promulgated.

[¶ 40] The trial court did not abuse its discretion in denying a hearing on the motion to modify custody. Applying an abuse-of-discretion standard, I would affirm.

[¶ 41] MARY MUEHLEN MARING